NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0542n.06

No. 21-3677

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 24, 2025
KELLY L. STEPHENS, Clerk

)
)
ALFONSO TUM-TOJIN,                                    )
)
      Petitioner,                                  )     ON PETITION FOR REVIEW OF
)     A DECISION OF THE BOARD
v.                                                    )     OF IMMIGRATION APPEALS
)
PAMELA BONDI, Attorney General                        )
)     OPINION
      Respondent.                                  )
)
_____                 )

Before: MOORE, CLAY, and WHITE, Circuit Judges.

**CLAY, Circuit Judge.** Petitioner Alfonso Tum-Tojin petitions for review of a Board of

Immigration Appeals order dismissing his appeal from an immigration judge's denial of his motion

to reopen his removal proceedings, under 8 C.F.R. § 1003.23(b), and rescind his *in absentia* order

of removal, under 8 U.S.C. § 1229a(b)(5)(C)(ii). For the following reasons, we **DENY** the petition

for review.

## I. BACKGROUND

### A. Factual Background

Petitioner Alfonso Tum-Tojin is a citizen of Guatemala who was detained on August 6,

2015 by a Customs and Border Patrol agent after crossing the border near Roma, Texas. At the

time, Petitioner was a sixteen-year-old unaccompanied minor. The next day, Petitioner was served

a notice to appear ("NTA"), which ordered him to appear before an immigration judge ("IJ") at a

date, time, and location to be determined later. Petitioner then spent approximately two months in

the care and custody of the Office of Refugee Resettlement before he was released to his brother, who lived in Ohio.

On October 21, 2015, the Department of Homeland Security ("DHS") served Petitioner with a notice of hearing ("NOH") by mail to the address of Petitioner's brother. The notice supplemented the August 7, 2015 NTA by specifying the date, time, and location by which Petitioner was to appear before an IJ for his master calendar hearing ("MCH"). Petitioner attended that hearing in-person on November 3, 2015. DHS proceeded to serve Petitioner with three more NOHs for three additional MCHs, set to occur on March 10, 2016, April 21, 2016, and July 7, 2016. DHS served these NOHs on Petitioner either by mail or personal service. Petitioner attended his April 21, 2016 MCH, where he was personally served an NOH ordering him to appear for another MCH on July 7, 2016. Petitioner, however, failed to appear for his July 7, 2016 MCH.

## B. Procedural History

Due to Petitioner's absence at his scheduled July 7, 2016 MCH, the IJ found Petitioner's asylum application abandoned and ordered his removal to Guatemala *in absentia*. The IJ's decision was mailed to Petitioner's address on record. Petitioner, however, claims he never received the IJ's order of removal. Petitioner only learned of his removal order after he had not heard from the immigration court "for a while" and conducted a Freedom of Information Act ("FOIA") inquiry with the U.S. Department of Justice, Executive Office for Immigration Review. AR at 77, 93. Thus, according to petitioner, he did not know that the IJ had ordered his removal *in absentia* until he received the results of his FOIA inquiry on August 11, 2018, over two years after the IJ's decision.

On October 15, 2018, Petitioner moved to have the IJ reopen his case and rescind the *in absentia* order of removal. Petitioner argued that reopening and recission were warranted because

his August 7, 2015 NTA was deficient under § 239(a)(1)(G)(i) of the Immigration and Nationality Act. He also argued that exceptional circumstances otherwise warranted *sua sponte* reopening of his proceedings, pursuant to 8 C.F.R. § 1003.23(b). Such circumstances include his claim that he did not know the date of the July 7, 2016 MCH. Petitioner usually relied on his brother to inform him of his hearings and drive him there because he did not understand English and had no legal means to drive himself to the immigration court. He claims that his brother did not inform him of the July 7, 2016 MCH.

The IJ denied Petitioner's motion, finding no good cause to grant reopening. The IJ noted Petitioner attended the April 21, 2016 MCH where "he was orally advised of his hearing on July 7, 2016," "personally served with the hearing notice," and "was also advised of the consequences of failing to appear." AR at 51. The IJ also found that any defects with the August 7, 2015 NTA "[were] cured with the service of hearing notices that he clearly received as he did appear" for his earlier MCHs. *Id.*

Petitioner then appealed the IJ's denial to the Board of Immigration Appeals, reiterating the same arguments he raised before the IJ. The Board dismissed his appeal, noting that the subsequent NOHs cured the defective August 7, 2015 NTA, Petitioner's claim of exceptional circumstances was untimely, and the IJ's refusal to *sua sponte* reopen Petitioner's case was warranted. Petitioner's timely petition for review followed, but was held in abeyance for almost four years as Petitioner unsuccessfully sought prosecutorial discretion. Petitioner now requests our review of (1) the Board's denial of his motion to reopen his removal proceedings and rescind his *in absentia* removal order due to his NTA's noncompliance with 8 U.S.C. § 1229(a)(1); (2) the Board's denial of his claim that his deficient NTA deprived the immigration court of jurisdiction to conduct removal proceedings against him; (3) his claim that 8 C.F.R. § 1003.18(b) is *ultra vires*

to § 1229(a)(1); and (4) his claim that his deficient NTA violated a claims processing rule and that he could not have waived or forfeited his objection to that violation.

## II. DISCUSSION

### A. Standard of Review

Where, as in the instant case, the Board issues a separate opinion in lieu of summarily affirming the IJ's decision, we review the Board's decision as the final agency determination. *Turcios-Flores v. Garland*, 67 F.4th 347, 353 (6th Cir. 2023). "We review the IJ's reasoning only to the extent the Board adopted it." *Id.* "[A]ny issues the Board did not address are not before the court." *Id.* We review the Board's denial of Petitioner's motion to reopen for abuse of discretion. *Acquaah v. Holder*, 589 F.3d 332, 334 (6th Cir. 2009). The Board abuses its discretion if "the denial 'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Id.* (quoting *Bi Feng Liu v. Holder*, 560 F.3d 485, 490 (6th Cir. 2009)). We review legal determinations *de novo*. *Id.*

### B. Analysis

#### 1. Petitioner's Deficient NTA as the Basis of His Removal Order

Petitioner first argues that he was improperly ordered removed *in absentia* because his August 7, 2015 NTA was not adequate notice under 8 U.S.C. § 1229(a). Petitioner may move to rescind an *in absentia* removal order if (1) "within 180 days after the date of the order of removal [he] demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1);" (2) "[he] demonstrates that [he] did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title;" or (3) "[he] demonstrates that [he] was in Federal or State custody and the failure to appear was through no fault of [his]." 8 U.S.C.

§ 1229a(b)(5)(C)(i)-(ii). A motion based on insufficient notice or incarceration may be filed "at any time." *Id.* § 1229a(b)(5)(C)(ii). The government "bears the burden of proving by clear and convincing evidence that notice was given in order to obtain an *in absentia* removal order. But once the order has been issued, the [petitioner] has the burden to prove the absence of notice in order to set that order aside." *Santos-Santos v. Barr*, 917 F.3d 486, 492 (6th Cir. 2019).

Petitioner is correct that his August 7, 2015 NTA, which did not specify the time and place of his immigration hearing, was not "notice" in accordance with paragraph (1) of 8 U.S.C. 1229(a). Paragraph (1) mandates that the NTA specify, among other requirements, "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). If this petition were resolved prior to 2024, Petitioner's argument would likely prevail.

But, as Petitioner reluctantly admits, the law on adequate notice has changed since the Supreme Court's decision in *Campos-Chaves v. Garland*, 602 U.S. 447 (2024). Prior to *Campos-Chaves*, the Supreme Court recognized that a statutorily deficient NTA could not be cured by subsequent NOHs, pursuant to § 1229(a)(2). *See, e.g.*, 602 U.S. at 477–80 (Jackson J., dissenting); *Niz-Chavez v. Garland*, 593 U.S. 155, 170 (2021) ("[O]nce the government serves a compliant notice to appear, [the statute] permits it to send a supplemental notice amending the time and place of an alien's hearing if logistics require a change." (citing 8 U.S.C. § 1229(a)(2)); *Pereira v. Sessions*, 585 U.S. 198, 210 (2018) ("[P]aragraph (2) presumes that the Government has already served a 'notice to appear under section 1229(a)' that specified a time and place as required by § 1229(a)(1)(G)(i).").

The *Campos-Chaves* Court, however, changed course. A statutorily deficient NTA may be cured by a subsequent NOH, pursuant to § 1229(a)(2), containing the time and place information required by § 1229(a)(1)(G)(i). *Campos-Chaves*, 602 U.S. at 463. In such a case, a petitioner who

"receive[s] a 'notice in accordance with' paragraph (2) . . . cannot seek rescission [of his or her *in absentia* removal order] under § 1229a(b)(5)(C)(ii)." *Id.*; *see also Guzman-Torralva v. Bondi*, 154 F.4th 880, 882–83 (6th Cir. 2025) (applying *Campos-Chaves*). Petitioner, who received a statutorily deficient NTA and subsequent NOHs which cured the deficiency, is therefore ineligible to seek recission of his *in absentia* removal order under *Campos-Chaves*. The Board ultimately did not abuse its discretion in denying Petitioner's appeal in this regard.

## 2. The Deficient NTA May Provide the IJ Jurisdiction to Initiate Removal Proceedings

Petitioner next argues that the IJ never had jurisdiction to initiate removal proceedings against him. "Federal immigration regulations provide that '[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court.'" *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 311 (6th Cir. 2018) (quoting 8 C.F.R. § 1003.14(a)). An NTA is one such charging document. *Id.* Petitioner claims his statutorily deficient August 7, 2015 NTA was not a charging document. Thus, jurisdiction never vested in the immigration court.

As Petitioner again admits, our precedents expressly reject his argument. In *Hernandez-Perez*, we "conclude[d] that jurisdiction vests with the immigration court where, as here, the mandatory information about the time of the hearing . . . is provided in a Notice of Hearing issued after the NTA." 911 F.3d at 314–15 (internal citation omitted). Our subsequent cases followed suit. *See, e.g.*, *Ramos Rafael v. Garland*, 15 F.4th 797, 801 (6th Cir. 2021) ("For jurisdictional purposes, it is not necessary that the Notice to Appear contain all the required information or that all the information be included in a single document."); *Santos-Santos*, 917 F.3d at 489–90 ("As the Notice of Hearing containing the requisite information was sent to [the petitioner] . . . the IJ

properly exercised jurisdiction."). Accordingly, the Board did not abuse its discretion in denying Petitioner's appeal on this ground.

### 3. Petitioner's Argument that 8 C.F.R. § 1003.18(b) is *ultra vires* to 8 U.S.C. § 1229(a)(1)

Petitioner contends that the Board's regulation at 8 C.F.R. § 1003.18(b), which enables immigration courts to provide subsequent notices to the parties regarding the time, place, and date of a hearing, is *ultra vires* to 8 U.S.C. § 1229(a)(1). He appears to claim that because the *Pereria* Court found § 1229(a)(1) to unambiguously define what information an NTA must contain, including the initial time and date of a hearing, § 1003.18(b) cannot supersede the statute by enabling immigration courts to set the time and date of a hearing in a subsequent NOH when an NTA initially lacks those details.

We disagree with Petitioner. Nothing in 8 C.F.R. § 1003.18(b) undermines § 1229(a)(1)'s mandate that an NTA must include certain information to be valid under that statute. The regulation merely allows an immigration court to provide the parties with the initial time and date of a hearing on a separate form, in this case an NOH, should the initial NTA lack that information. 8 C.F.R. § 1003.18(b). Accordingly, we find that the regulation is consistent with the statute. *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) ("Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." (citation modified)); *see also Santos-Santos*, 917 F.3d at 490 n.4 (holding that 8 C.F.R. §§ 1003.13-14 is consistent with § 1229(a)); *Patel v. Barr*, 788 F. App'x 352, 354 (6th Cir. 2019) (rejecting the petitioner's argument that 8 C.F.R. § 1003.18 is *ultra vires* to § 1229(a) because of our holding in *Santos-Santos*).

### 4. Petitioner's Claims Processing Rule Argument

Finally, Petitioner contends for the first time on appeal that 8 U.S.C. § 1229(a)(1) is a claims processing rule and that his deficient NTA violated that rule. Claims processing rules are subject to waiver and forfeiture for a petitioner's failure to object to the deficient NTA at the immigration court. *Matter of Fernandes*, 28 I. & N. Dec. 605, 608–09 (BIA 2022). Nonetheless, Petitioner avers that he could not knowingly waive his claims processing rule argument because he was a minor in the care of his brother at the time of the at-issue proceedings and that he never had the opportunity to object to the defective NTA in any of his MCHs before the IJ.

We cannot reach the merits of Petitioner's argument, however, because we do not have jurisdiction over his claim. We may "review a final order of removal only if . . . the [petitioner] has exhausted all administrative remedies available to [him] as of right[.]" 8 U.S.C. § 1252(d)(1). We have interpreted exhaustion to "require the [petitioner] to preserve each claim by presenting it to the BIA." *Cuevas-Nuno v. Barr*, 969 F.3d 331, 334 (6th Cir. 2020) (quoting *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004), *abrogated on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411 (2023)) (citation modified). To determine whether a petitioner has preserved his claims, "[w]e look to the [petitioner's] brief before the BIA to determine which claims the [petitioner] adequately raised before that body." *Id.* Petitioner's briefing before the Board does not raise or discuss his claims processing rule argument. We therefore lack jurisdiction to consider this argument.

### III. CONCLUSION

For the reasons set forth above, we **DENY** the petition for review.